## ROUNDTREE *vs.* GORDON.

1. When a plea to a bill in Chancery is entered, if its sufficiency is questioned, it is not demurred to, but is set down for argument, and, if deemed bad, is overruled; otherwise, it is allowed.

2. A plea to a bill in Chancery must always be put in upon oath, unless it is a plea to the jurisdiction of the court, or of a matter of record, and such like matters, whose truth is apparent. And if a plea which is not sworn to is set down for argument, which is equivalent to a demurrer in proceedings at common law, it is no waiver of the irregularity.

3. A special replication is unknown in modern Chancery practice. When the defendant introduces new matter into his plea or answer, which makes it necessary for the complainant to put in issue some additional fact in avoidance of such new matter, he is permitted to amend his bill, and to the new matter thus introduced by way of amendment the defendant puts in a further answer, and thus has the benefit of a special rejoinder. If a material charge is omitted in the bill, and it is alleged in a special replication, the defendant is not bound to notice it, nor is he affected by it.

4. When an answer in Chancery is responsive to the bill, and positively, plainly and precisely denies the matter of equity in the bill, it is to be taken as true, unless it be contradicted by two witnesses, or by one witness and corroborating circumstances; but where the answer is thus contradicted, in any one or more important particulars, it is deprived, in all other respects, of that weight which is allowed to answers by the rules of a court of equity; for, being falsified in one thing, no confidence can be placed in it as to others, according to the maxim, *Falsum in uno, falsum in omnibus.*

APPEAL from Warren Circuit Court.

CARTY WELLS, *for Appellant.*

1. The defendant's plea in bar is good.

The deed of an infant is either void or voidable.—See 2 Burrow's Rep., 1804.

First: If void, it may be treated by all as a nullity.

If void, nothing passed by Cook's deed to Gordon, and he had no interest of which he could be defrauded.

Second: But, if voidable only, the making a new deed to Roundtree, after he became of age, was an act of sufficient solemnity to declare his avoidance of the first deed, and which was made in infancy.—See the above case in Burrow, and also 11 I. R., 539, and 14 I. R., 124.

Third: The deed was never delivered to Gordon, but left with the clerk incomplete, to be afterwards completed and delivered.

2. The replication is obviously bad.

To plead infancy, is a privilege granted to infants by law, for their benefit.

The fact, that he is an orphan, and without guardian, ought not to deprive him of that privilege; on the contrary, it should extend to him greater indulgence in its exercise.

Nor can the fact, that he has a wife and family, whose interests are at stake as well as his own, lessen the necessity for his security.

The facts, that he is an orphan and a married man, neither give strength to his intellect, or lessen the necessity of protecting his rights from the consequences of his own youthful indiscretion.

3. The decree is not warranted by the evidence. The answer denies the allegations of fraud and notice of the first deed.

To overturn this answer, the law requires two witnesses, or one with strong corroborating circumstances.

It is denied by but one witness, the father of the complainant. This witness indeed proves notice of a verbal sale, but not notice of the deed, and even his account of the verbal sale is not corroborated, for he (the witness) stated to other persons that this verbal sale was made to himself. The testimony tends to corroborate rather than to impugn the answer. To support the rule here contended for, see 1 J. C. R., 131; Eq. Dig., 81–84.

But, if notice of the verbal contract be proved, it is not a valid, but a void contract.—See 2 Mo. Rep., 135.

Gordon could not compel a specific execution of the contract with Cook: he could only maintain an action to recover back the purchase-money paid.—See 5 J. R., 85; 5 Mass. R., 133; 1 J. C. R., 131.

As to Cook's insolvency, complainant should not complain. He trusted him eight months with his contract open, giving him credit by leaving him the apparent owner of the land.

4. The decree is erroneous, because it gives complainant more than his bill asks. The bill prays, that the deed to defendant may be set aside. The decree gives him the title.

5. The deed to Roundtree ought at least to be good as to Mrs. Cook's interest, yet the decree vacates it *in toto*.

W. M. Campbell, *for Appellee.*

1. The Circuit Court did not err in overruling the demurrer of Roundtree to Gordon's special replication.—See Reeves' Dom. Rel., p.—.

2. If Cook was under age at the time he made the deed to Gordon, his act was merely voidable, and his continuing in possession of the mare, and permitting Gordon to retain possession of the deed and the original receiver's receipt without objection, are acts of acquiescence that amount to a confirmation.—See Bingham on Infancy, p. 10, note 2, p. 12, note 14, 15, 17, 18, 29, 34, 40, 41, 43, 46, 51; Reeves' Dom. Rel., 250, 1; 4 Pirtle's Digest, 523, 4.

3. The deed to Roundtree being fraudulent, cannot be a legal act of disaffirmance, by Cook, of the deed to Gordon.—Bingham on Infancy, pp. 49, 51, 63, 65, 68; Reeves' Dom. Rel., 259, 260.

4. Roundtree being a third person, cannot take advantage of the infancy of Cook.—See 5 John. Rep., 160; Bingham on Infancy, p. 1, note.

5. The plea of infancy is a personal privilege, intended as a defence, and not to be used by the infant, for the purpose of defrauding others.—Bingham on Infancy, p. 8; Reeves' Dom. Rel., 237, 241, 242, 246, 247, 248, 249, 260, 433.

6. Roundtree, before he purchased of Cook, was sufficiently apprized of the sale of the land to Gordon, to put him on his guard, and to affect him with notice. —4 Mo. Rep., p. —.

7. The sale by Cook to Gordon was a sale of the whole land, and the decree to him is properly for the whole land; neither a sale of the whole land, nor a decree for the whole land, can in any manner affect the possible contingent future right of dower in the land by Cook's wife.

8. There is no proof that Cook, at the time of the sale to Gordon was an infant, or that he was twenty-one years old when he sold to Roundtree.

Scott, J., *delivered the opinion of the Court.*

This was a bill in chancery, filed by the appellee against the appellant, in which it was charged, that the appellee purchased, from one William Cook, a tract of land, containing forty acres, for a mare valued at fifty-five dollars; that the mare was delivered to Cook, who thereupon placed in the hands of the appellee the receiver's receipt for the purchase-money of the land; that the transaction took place at the house of Grief Stewart, in the presence of persons called as witnesses, amongst whom was the appellant, who was well apprized of the whole affair; that it was agreed between the said appellee and Cook, with a full knowledge on the part of the appellant, that the appellee and Cook should

meet at the clerk's office, in a few days, for the purpose of completing the bargain by the execution of a conveyance; that they met in pursuance of said agreement, and in consequence of the absence of Cook's wife, who was prevented by indisposition from attending, a deed was executed and acknowledged by Cook alone, and, with the consent of the parties, it was left with the clerk until Mrs. Cook should come to execute and acknowledge it; that, whilst the deed was in this situation, the appellant, with a full knowledge of all these facts, some nine months after, purchased the same land from Cook, and, by artfully employing means to conceal his design from the appellee, he contrived to have a deed executed, acknowledged, and recorded before that of the appellee.

The prayer of the bill was, that the appellant might be compelled to convey the legal title thus fraudulently acquired by him.

Cook was made a party defendant, and admitted the truth of the fact charged in the bill.

The appellant, Roundtree, filed a plea, alleging, in substance, that Cook, at the date of the conveyance to the appellee, was an infant under the age of twenty-one years, and that at the time of executing the conveyance to him he was of full age.

To this plea, the truth of which was not sworn to, there was a demurrer, which was afterwards withdrawn, and a special replication filed, alleging that the said Cook, before executing the conveyance to the appellee, had for some time been full grown—had the size and appearance of a man of age; that he was married, and had been transacting business for himself; that he had purchased the land in dispute from the United States; that his father was dead, and that he had no guardian.

To this replication there was a demurrer, which, after argument, was overruled.

The appellant, Roundtree, then filed an answer to the bill, in which it was admitted, that, at the time mentioned, he purchased from Cook the land in controversy, but denies that he ever heard or knew that the appellee had bought the land until after he had obtained, and put on record, a deed for the same; that, on the day of the agreement in relation to the land, he, with others, amongst whom was Jonathan D. Gordon, the father of the appellee, was present; he heard some one say that Cook and Gordon had traded; he did not recollect that he saw the appellee at the place during the day; he supposed it was Cook and Jonathan D. Gordon who had made a bargain, and did not learn, until after he had left the place, the subject matter of it; he denied that he was called to witness any contract, as charged in the bill; on his way home he was informed by Jonathan D. Gordon, that he had purchased from Cook the land in dispute, for which he gave a certain mare, which was described.

Some nine months after, Cook being indebted to him in the sum of one hundred and fifty or two hundred dollars, proposed to give the land in part payment of the said debt; that he inquired of Cook if he had not sold the land to J. D. Gordon. Cook informed him that he had received a mare for the land, but that only a verbal contract existed between him and Gordon; that Gordon had taken an undue advantage of him; that he was under age; did not feel himself under any

obligation to make to Gordon a conveyance of the land, and would not do so, but would pay him for the mare. That, after receiving this information from Cook, and after repeated solicitations, he purchased the land, for which he gave him credit for fifty-five dollars, part of the said debt.

It was admitted, that he requested the person who drew the conveyance, and the justice before whom it was acknowledged, to keep the transaction a secret, but alleges, as a reason for the request, that Jon. D. Gordon was especially deputized to serve as constable for him, and had in his hands several executions in his favor, which he was afraid Gordon would neglect if he was informed that he had purchased the land. He denies, that he had any knowledge of the conveyance to the appellee before he was served with process in this cause. To this answer there was a replication. Witnesses were examined, one of whom testified that J. D. Gordon made the contract; that both J. D. Gordon and his son, the appellee, were present; that when he was called to witness the agreement, he was informed that the appellee's mare had been given for the land; that whilst the bystanders were conversing about the bargain, he heard the appellant say, that it was a piece of good land; he had shown it to Cook.

Jonathan D. Gordon, among other things, testified that he bought the land for his son, as his agent, by special request; that he was in the habit of making bargains for his sons; that the appellant, with others, was present; that he heard the appellant say to his son, the appellee, "You have made a good trade; it was a piece of good land; he had shown it to Cook to enter;" that he and the appellant, on their way home from Stewart's, had a full conversation on the subject of the contract; that it was fully understood by the appellant, that the land was purchased for his son; that he and Roundtree, the appellant, lived within a quarter of a mile of each other, and knew each other's stock, and that the appellant well knew that the mare given for the land belonged to his son, the appellee. Other witnesses were introduced, who testified they were present at the time of the contract, and it was their impression that it was made with Jon. D. Gordon.

On a hearing, the court below decreed for the appellee, who was complainant.

It will be necessary to dispose of the plea, and the proceedings consequent upon it, before we take up the point on which the cause turns. All the steps of the parties in relation to the plea were novel, and such as are not usual in courts of chancery: they are without precedent to sustain them.

When a plea to a bill in chancery is entered, if its sufficiency is questioned, it is not demurred to, but it is set down for argument, and if it is deemed bad, it is overruled, otherwise, it is allowed.

A plea to a bill in chancery must always be put in upon oath, unless it is a plea to the jurisdiction of the court, or of a matter of record, and such like matters whose truth is apparent; (Cooper's Equity, 231; Smith's Chancery Practice, vol. i., p. 231;) and if a plea which is not sworn to is set down for argument, which is equivalent to a demurrer in proceedings at common law, it is no waiver of the irregularity. (2 Ves. and Bea., 355.) A special replication is unknown in modern chancery practice: it was occasioned by the defendant's

introducing new matter into his plea, or answer, which made it necessary for the plaintiff to put in issue some additional fact on his part, in avoidance of such new matter introduced by the defendant. The consequence of a special replication was a rejoinder, and then a sur-rejoinder, &c. This course of proceeding proving tedious, and productive of delay and expense, has long since been altered, and instead of a special replication, the plaintiff is permitted to amend his bill. To the new matter thus introduced by way of amendment, the defendant puts in a further answer, and thus has the benefit of a special rejoinder. (Cooper's Equity, 329.)

If a material charge is omitted in the bill, and it is alleged in a special replication, the defendant is not bound to notice it, nor is he affected by it. (*Ibid.*) From this view of the course of proceedings in chancery, it is obvious, that all the steps taken in the court below, in relation to the plea of infancy, were irregular. The plea not having been put in upon oath, the irregularity we have seen was not waived by setting it down for argument, and the matter of the special replication not affecting the defendant below, and as from proceedings so irregular no inference or admission can be made injurious to either party, we feel ourselves warranted, in determining this cause, to lay aside all consideration of the fact of infancy, especially as it was not properly before the court below, and as there is no proof of its existence in the record.

The question on which the cause turns is, whether the appellant had actual notice of the conveyance to the appellee when he purchased the land from Cook? The statute concerning conveyances, sec. 32, provides, that no instrument in writing that conveys any real estate, or whereby any real estate may be affected, either in law or equity, shall be valid, except between the parties thereto, and such as have actual notice thereof, until the same shall be deposited with the recorder for record. Notice is of two kinds, actual or express, and constructive or implied; this latter sort is also sometimes termed legal, or presumptive notice. Implied, or constructive notice, is that which arises from presumption and construction of law; it is evidence of notice, the presumption of which is violent, that the law will not allow of its being controverted. Being sometimes contrary to the fact, it is confined to cases in which violent presumption of actual notice arises. (Fonblanque, 447.) A *lis pendens*, or pendency of a suit in one of the superior courts of justice, is ahead of constructive or implied notice to all persons. Actual notice is a real knowledge of the existence of the prior incumbrance, and it is proved by direct evidence, or by proof of other facts, from which such knowledge may be justly inferred; and when proved even by circumstantial evidence, it is as confidently taken to exist, as if proved by direct evidence; and because it is established by circumstances, it cannot, therefore, be termed constructive notice, no more than the payment of a debt proved by circumstantial evidence would be called a constructive payment.

It was contended by the appellant, that, as he had denied all fraud and notice of the prior conveyance to the appellee, and as that answer is disproved but by a single witness, he is therefore entitled to a decree. It may be admitted, that, when an answer positively, plainly, and precisely denies the matter of equity in

the bill, and when the answer is responsive to the bill, it is to be taken as true, unless it be contradicted by two witnesses, or by one witness and corroborating circumstances. (1 Mad., 338.) But where an answer is contradicted in any one or more important particulars, by sufficient evidence, that is, by two witnesses, or one witness with corroborating circumstances, it is deprived in all other respects of that weight which is allowed to answers, by the rules of a court of equity; for being falsified in one thing, no confidence can be placed in it as to others, according to the maxim, *Falsum in uno, falsum in omnibus.*

And it has been held, that the answer may, in itself, contain the circumstances giving greater credit to the witness, sufficient to found a decree against the defendant. (9 Ves., 275; 2 John. C. R., 93, 4.) A learned judge has remarked, when speaking on this subject, "That, on a public examination, a witness may, by sudden and ill-understood questions, be made to commit contradictions, which are to be held up as fatal to his general testimony. But when a witness is examined deliberately, and in private, upon interrogatories prepared, and has the opportunity of weighing his answers before he finally signs them, they being read over to him, it must at least be admitted, that whatever other disadvantages such a mode of judicial inquiry may be exposed to, it can never be seriously urged that a witness has been entrapped by surprise, and through inadvertence, and that he has been made to say, in hurry and confusion, and from mere weakness of nerves and apprehension, that which, on recollection and deliberation, and the free use of his understanding, he has a right to unsay. Therefore, in courts proceeding in this course of examination, the rule of *Falsus in uno, falsus in omnibus,* is a rule of unexceptionable justice."—1 Robinson, 54.

It is impossible to read the answer of the appellant, and the evidence of the witnesses preserved in this cause, without coming to the conclusion, that he had actual notice of the prior deed. The appellant was at the place where the bargain was made, which was the house of an individual, at which some ten or twelve persons were present, and all who were sworn say the contract was publicly spoken of.

The appellant alleges, in his answer, that he understood that Cook contracted with the father of the appellee; this is literally true, but he does not say whether he knew whether the father was acting for the son; there is nothing contained in the answer that repels the inference he had such knowledge, and, indeed, from the cautious manner in which the answer is worded in this respect, a well-grounded suspicion arises, that he was fully aware the father was acting for the son. The appellant resided within one half mile of the father of the appellee, who lived with his father; he knew old Mr. Gordon's horses; and is it to be supposed that he was ignorant of the fact, that the mare belonged to the appellee?

But the principle last above stated is decisive of this cause. Roundtree, the appellant, in his answer, expressly denies that he knew the subject-matter of the agreement between the appellee and Cook. This is an important particular in the answer, and yet in this particular his answer is flatly contradicted by two witnesses.

4

The first witness sworn, states, that in a conversation about the bargain between the appellee and Cook, he heard the appellant say, "it was a piece of good land;" another heard him say, "the appellee had made a good bargain, for it was a piece of very good land."

The answer being thus falsified in one important particular, all confidence in it, in all other respects, is destroyed, and the evidence of the witnesses fully sustain the case of the appellee.

Decree affirmed.